## THE POTOMAC.

### NIAGARA FALLS PAPER CO. v. CROUCKETT et al.

(Circuit Court of Appeals, Second Circuit. February 18, 1896.)

SEAMEN—EXTRA WAGES.

Seamen are not entitled to extra wages for services rendered in unloading cargo in a harbor of refuge, in order to free the vessel from water; and a promise by the master to pay extra compensation upon their refusal to work without it, is void. 66 Fed. 348, reversed.

Appeal from the District Court of the United States for the Northern District of New York.

This was a libel by James Crouckett and James Hanley against the barge Potomac (Niagara Falls Paper Company, claimant), to recover extra wages. The district court made a decree in favor of libelants (66 Fed. 348), and the claimant appealed.

George Clinton, for appellant.

Urban C. Bell, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The libelants shipped, in September, 1894, on board the barge Potomac, one as mate and the other as seaman, and each upon wages by the month. The barge left Buffalo in September, bound for Parry Sound, in Canada. On her return trip, she was laden with lumber below and on deck, consigned to Tonawanda, N. Y., and left Parry Sound on the morning

of September 23d, in tow of the tug Seguine. The next morning she encountered a violent gale, and, after passing Cove Island light, the towline parted, the barge drifted, shipped heavy seas, became waterlogged, lost part of her deck load, dropped anchor in the night near Flower Pot Island, and stayed there till morning, when the tug came and towed her to a small harbor in Canada called "Tubmerry," between one and two miles from the larger Tubmerry port. The vessel was tied up near the lighthouse, where there was a hamlet of 8 families containing about 75 people. In order to free the barge from water, it was necessary to remove the lumber from the deck, put on steam pumps, box them in, and afterwards reload the cargo. The captain hired men from the shore to assist in this work, but the sailors exacted extra compensation before they would touch the cargo for the purpose of unloading, and demanded and received from the captain a promise to pay extra wages of 30 cents per hour. The barge was placed in proper condition, and was towed to Tonawanda. The extra compensation of each of the libelants amounted to $10.50. The owners paid the extra amount to all the sailors except the two libelants. There was no apparent reason for this discrimination. To recover the extra wages this libel was brought.

The district judge, in deciding in favor of the libelants, was undoubtedly influenced by the seeming unfairness of the claimants in paying a part only of the men in accordance with the promise of the captain. He furthermore says:

"If I thought that a decree for the libelants involved a departure from the old and salutary rule that seamen must not expect extra compensation for services rendered in their capacity as seamen, no matter how arduous or meritorious they may be, I should dismiss the libel. It would lead to gross insubordination, and increase the difficulties and dangers of navigation immeasurably, if the court should sanction the idea that a seaman may refuse to obey the master's order on the ground that the work he is directed to perform is 'extra,' and entitled him to additional compensation."

He thought that the facts took the case out of the general rule, because the Potomac was in port at the time in question, and says:

"The work was partly on the vessel and partly on shore, and consisted in unloading and reloading a part of her cargo."

No question is made as to the general rule which the district judge stated, or that seamen are bound, without extra compensation, to render extra labor and services to save the vessel and cargo in case of wreck or impending calamity, and that a contract for extra pay, "made when the ship is in distress, or obtained by any unfair practices or advantage taken by the seamen, is wholly void." Curt. Merch. Seam. 28. In this case the barge had become disabled, and was taken to a harbor of refuge, so as to be enabled to prosecute her voyage. She was compelled by stress of weather to stop at Tubmerry, in order to gain ability to go to her place of destination. We think that the district judge was in error in considering that, at the time in question, the barge was in port. She was neither in her port of destination, nor in a port where the

voyage was at an end. She was in a temporary harbor of refuge, where the duties of seamen in relation to the care of her cargo and the safety of the vessel still continued. The unloading of the vessel was necessary, in order to enable her to be freed from water, and to complete her trip and earn her freight; and in her distress this service was a part of the sailors' duty. It follows that the contract was void.

The decree of the district court is reversed, without costs, and the cause is remanded to the district court, with instructions to dismiss the libel, without costs.